**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 18-CV-25248-MORENO/LOUIS

ANDREA HOLLAND,
on behalf of Amina West,

    Plaintiff,

vs.

ANDREW SAUL, Commissioner of
Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This cause came before the Court on the Parties' cross-motions for summary judgment (ECF Nos. 29, 32). These Motions were referred to the undersigned United States Magistrate Judge by the Honorable Federico A. Moreno, United States District Judge, for a Report and Recommendation (ECF Nos. 2, 7). Upon consideration of the briefing and the record, and being otherwise fully advised in the premises, the undersigned **RECOMMENDS** that Plaintiff's Motion (ECF No. 29) be **DENIED**; Defendant's Motion (ECF No. 32) be **GRANTED**, and the Administrative Law Judge's decision be **AFFIRMED**.

## I.    PROCEDURAL HISTORY

This case involves an application for supplemental security income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. On November 19, 2015, Plaintiff Andrea Holland filed an application for SSI on behalf of her daughter ("Claimant"), alleging she was

disabled as of January 1, 2015 (R. 15).[1] Plaintiff's claim was denied upon initial review and again upon reconsideration (*id.*). Plaintiff then requested an administrative hearing before an Administrative Law Judge ("ALJ"), which was held on November 27, 2017 (R. 15, 35–61).

On April 6, 2018, the ALJ found that Claimant was not disabled and issued his unfavorable decision (R. 12–30). Plaintiff's request for review of the ALJ's decision was thereafter denied by the Appeals Council on October 19, 2018 (R. 1–6), rendering the ALJ's decision final. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986); 42 U.S.C. § 405(g). Having exhausted her administrative remedies, Plaintiff now seeks judicial review of the ALJ's decision. Both Parties have moved for summary judgement and the motions are ripe for adjudication.

## II.   LEGAL STANDARD

In reviewing the ALJ's final decision, the Court's role is limited solely to determining whether there is substantial evidence in the record to support the decision and whether the Commissioner correctly applied the appropriate legal standards. *See* 42 U.S.C. § 405(g); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). "Substantial evidence is more than a scintilla, but less than a preponderance," and involves "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citation omitted); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, we must affirm "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

In cases involving disability and SSI claims by or on behalf of persons under the age of 18,

---

[1] All references are to the record of the administrative proceeding transcripts filed by Defendant (ECF No. 21).

the ALJ must determine whether the claimant is disabled. A child under the age of 18 is considered disabled, and thus entitled to SSI benefits, if the child has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations" which "can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906.

The ALJ must undertake a three-step sequential analysis to determine whether a claimant is disabled. § 416.924(a)–(d). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. § 416.924(a). If so, then the claimant is not disabled. *Id*.

In the second step, the ALJ must determine whether the claimant suffers from a "severe" impairment or combination of impairments that is "severe"—at least one such impairment is necessary in order for the disability analysis to continue. 20 C.F.R. § 416.924(a). If the claimant does not have a severe medically determinable impairment or combination of impairments, then she is not disabled. *Id.*

At step three, the ALJ must determine whether the impairment "causes marked and severe functional limitations" for the child. 20 C.F.R. §§416.911(b), 416.924(d). This determination is made according to objective criteria set forth in the Code of Federal regulations ("C.F.R."), which contains a Listing of Impairments (the "Listings") categorizing most medical problems from which a claimant can suffer. § 416.925(a). The Listings describe various limitations each impairment may impose on a claimant's abilities. Limitations in the Listings are considered "marked and severe." *Id*.

A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet, medically equal, or functionally equal" one of the impairments on the Listings. § 416.911(b)(1). A child's limitations "meet" the limitations in the Listings if the child

3

actually suffers from the limitations specified in the Listings for that child's severe impairment. *Wilson*, 284 F.3d at 1224 ("To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criterial of the Listings and the duration requirement."). Alternatively, a child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment." § 416.926(a)(2).

Finally, even if the limitations resulting from a child's impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are "functionally equal" to those in the Listings by assessing the degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. lists six domains of life for evaluating a child's normal life activities: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. § 416.926(b)(1).

Critically, in making this determination, the ALJ must consider the combined effect of *all* medically determinable impairments, even those that are not severe. 20 C.F.R. §§ 416.923; 416.924a(b)(4); 416.926a(a)–(c). If the claimant has an impairment or combination of impairments that meets or medically equals the severity of, or functionally equals, the Listings and it has lasted or is expected to last for a continuous period of at least twelve months, then the claimant is disabled. § 416.924(d). If not, then the claimant is not disabled. *Id*.

Ultimately, it is the function of the ALJ to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). It is also the responsibility of the ALJ to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence. *See Celebrezze v. O'Brient*, 323 F.2d

989, 990 (5th Cir. 1963). Therefore, in determining whether the ALJ's decision is supported by substantial evidence, a court is not to re-weigh the evidence anew. *Phillips*, 357 F.3d at 1240 n.8.

### III. THE RECORD

#### 1. Plaintiff's Testimony

Plaintiff testified at the hearing before the ALJ that she is Claimant's mother. Plaintiff is 47 and unemployed (R. 44–45). She supports herself and her children through income she receives from disability benefits. (R. 45). Plaintiff testified that Claimant suffers from Attention Deficit Hyperactivity Disorder ("ADHD") (R. 44). She testified that Claimant was six years old at the time of the hearing and that she had been receiving treatment for a mental health issue. Plaintiff testified that Claimant attended school, but Claimant could not sit down in class or in the cafeteria (R. 46). When she is home, Claimant could not sit still for more than thirty minutes (*id*.). Plaintiff testified that Claimant is responsible for cleaning her room and making her bed, none of which she could complete without getting distracted (*id*.).

Plaintiff testified that Claimant was in second grade and did not attend any special education classes (R. 48). Claimant displayed behavioral issues at school, which included trying to stab someone with a pencil, refusing to sit down, being uncooperative, unable to maintain friendships with other children, and generally inattentive to teachers (R. 48–49). On multiple occasions, Claimant had run out of her classroom (R. 51). Plaintiff testified that the school threatened to Baker Act Claimant after she ran out of the school, would not calm down, and began rolling in the grass (R. 52). Claimant has received overall poor conduct grades (Ds and Fs) but receives average/normal academic grades ("mostly 'Bs' and 'Cs,' one 'A' in physical education.") (R. 60).

Plaintiff further testified that Claimant had been receiving behavioral treatment with

Richard Asensio, an Advanced Registered Nurse Practitioner, at Community Health of South Florida, Inc. ("CHI"), every month from April 2016 through the time of the hearing (R. 41–42). Prior to CHI, Claimant received treatment and medications from Multilingual Psychotherapy Centers ("MPC") "for like four months" (R. 43–44). At the time of the hearing, Claimant was taking Vyvanse and Clonidine as medication, which would help her behavior, but would eventually wear off and Claimant would be "right back the same way" (R. 54–55).

During the hearing, the ALJ asked Claimant several questions such as "how are you," to which Claimant gave minimal responses including: shrugging her shoulders, saying "uh-huh," and not responding whatsoever (R. 39–40, 56–59).

### 2. Summary of Relevant Medical Evidence

#### a. Multilingual Psychotherapy Centers

On October 22, 2015, Claimant was treated at MPC, where a Brief Behavioral Status Screening Examination was conducted based upon complaints of anger, hyperactivity, impulsiveness, inattentiveness, and defiance (R. 268). The therapist observed that Claimant had very high activity and poor impulse control, developed anger issues that were not present in Pre-Kindergarten, but were becoming severe in Kindergarten and at home, that Claimant did not accept responsibility for her actions, and throws tantrums when she does not get her way (R. 268).

On November 18, 2015, Claimant returned to MPC for a psychiatric evaluation to be conducted by Ovide H. Bernadotte, M.D. (R. 281). Dr. Bernadotte diagnosed Claimant with ADHD and Impulse Control Disorder (R. 283). Claimant was prescribed Methylphenidate (Ritalin) and Clonidine to help control her behavior. *Id*. A mental status examination indicated that Claimant was calm and alert, had a neutral mood, but had limited attention, insight, and judgment. *Id*.

Claimant subsequently returned to Dr. Bernadotte for a mental status examination once a month up through March 31, 2016 (R. 277–80). At each examination, Claimant was reported to have been calm and cooperative, of a neutral mood, but to have limited judgment and impulse control due to her age. *Id*.

### b.  Clements & Associates, Inc.

Claimant was also evaluated at Clements & Associates on February 13, 2016, for a Learning Disability Evaluation (R. 261). Rosimeri Clements, Psy. D. performed the evaluation and found the following: 1) Claimant's intellectual quotient fell within the Average range indicating no problems; and 2) the Claimant's achievement standard score demonstrated that she is functioning within her age level (R. 266). Additional observations showed that Claimant "would often slide off her chair and would crawl on the floor," but "was cooperative and appeared to put forth her best effort on the tests" (R. 265).

### c.  Community Health of South Florida, Inc.

On June 7, 2016, Claimant was evaluated by Brittany Quinn, MH Specialist, at CHI, for a Biopsychosocial Assessment (R. 291). Claimant was diagnosed with ADHD, predominantly hyperactive type (R. 299). Otherwise, Claimant was found to have normal intelligence and above-average academic performance along with motivational barriers to learning, emotional trauma, lack of social skills, impulsivity, and poor judgment. (R. 294–97). Additionally, Claimant was calm and cooperative during the examination (R. 298).

On July 29, 2016, Claimant returned to CHI for a mental status exam conducted by Carlos A. Salgado, M.D. (R. 304–306). The exam found normal psychomotor activity, a euthymic mood, a cooperative attitude, fair insight, along with impaired concentration (R. 304). Dr. Salgado discontinued Claimant's Ritalin medication and switched Claimant to Concerta (R. 305). On

August 26, 2016, Claimant was again seen by Dr. Salgado (R. 307-309). Dr. Salgado discontinued Claimant's Concerta prescription and replaced it with Claimant's previous medication, Ritalin (R. 308).

On December 6, 2016, Claimant was evaluated by Dr. Salgado, who noted that Claimant did not demonstrate behavioral issues while on her medications (R. 320). Claimant was cooperative, euthymic, and had fair insight and judgment (R. 320–321).

On May 2, 2017, Claimant returned to CHI. Plaintiff reported that Claimant's behavior had worsened after she had run out of medication a week or two prior (R. 340). Claimant was noticeably irritable and passive-aggressive (*id*.). The goal following this visit was to return Claimant to her medications (R. 341). Subsequently, on June 26, 2017, Claimant went to CHI and it was reported that since the last visit "her grades went up and her teachers say she has been doing well" (R. 347). The goal for Claimant was to "get her back on her meds" (R. 351). Claimant was last seen on October 24, 2017, when her mother reported that "behavior-wise she is better, she still acts up sometimes but nothing like before" (R. 355). Although Claimant's behavior has improved, teachers have reported that by twelve or one in the afternoon, Claimant is unable to sit still (*id*.) CHI prescribed Vyvanse to Claimant with the goal that it would last longer throughout the day.

### 3. The ALJ's Decision

After reviewing the evidence, evaluating Claimant's medical records, and conducting the required three-step inquiry, the ALJ found that Claimant had not been disabled since November 19, 2015, the date the application was filed (R. 18). At step one, the ALJ determined that Claimant was a minor at the time of the hearing and had not engaged in substantial gainful activity since November 19, 2015 (R. 18). At step two, the ALJ determined that Claimant has a severe medically determinable impairment of ADHD. At step three, the ALJ found that Claimant did not have an

impairment or combination of impairments that met or functionally equaled the severity of a listed impairment (R. 19). The ALJ also determined that Claimant did not have an extreme limitation in any domain of functioning nor a marked limitation in two domains (R. 24–30).

## IV. ANALYSIS

In her Motion, Plaintiff argues that the ALJ's decision should be reversed and remanded on two grounds: (1) the ALJ failed to properly assess the evidence in the record, including Claimant's school and medical records; and (2) the ALJ erred in concluding Claimant's impairments do not meet the severity of an impairment in the Listings.

### 1. Whether the ALJ Properly Assessed the Medical and Non-Medical Opinion Evidence

#### a. Medical Opinions

Plaintiff argues that the ALJ's decision should be reversed and remanded because the ALJ did not sufficiently consider or discuss the weight given to the opinions of Claimant's treating psychiatrists Dr. Bernadotte and Dr. Salgado.

An ALJ is required to consider and explain the weight given to different medical doctors including treating, examining, and consulting physicians. *Martinez v. Acting Comm'r of Soc. Sec.*, No. 15-14798, 2016 WL 447675, at *2 (11th Cir. Aug. 25, 2016). Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527. An ALJ may disregard the medical opinions of treating physicians for good cause but must articulate his reasons for doing so. Phillips, 357 F.3d at 1240–41. Moreover, the ALJ must state with particularity the weight given to different medical opinions and explain the reasons why such weight was allocated. *Mills v. Berryhill*, No. 17-21832-CIV, 2018 WL 6446883, at *9 (S.D. Fla. Oct. 18, 2018) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). A mere statement

that the ALJ considered the medical opinions is insufficient without an articulation of the weight assigned to each opinion and why such weight was assigned. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

Plaintiff argues that the ALJ erred in his review and weighing of the medical opinions of Claimant's treating physicians, Dr. Bernadotte and Dr. Salgado. Plaintiff did not identify any opinion that she contends the ALJ failed to consider, but rather cited generally to the medical records from each doctor noting Claimant's symptoms. In fact, neither doctor advanced medical opinions regarding the severity of the Claimant's impairments. *See Winschel v. Acting Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s)"). While both doctors note that Claimant suffers from ADHD and summarize the manifestations of the disorder, neither doctor advances an opinion or a finding regarding Claimant's limitations.

Moreover, a review of the ALJ's opinion and the record reveals that while the ALJ did not identify the doctors by names, the ALJ specifically noted the weight afforded to the doctors' treatment notes. For example, at step three, the ALJ cites to Dr. Bernadotte's clinical impressions in which he notes that Claimant presents with hyperactivity and poor impulse control but in school she was "mostly manageable and well behaved and learned well." (R. 21, 270). At step two, the ALJ cited to Dr. Bernadotte's determination that Claimant had the severe impairment of ADHD (R. 18). Further, the ALJ reviewed the Claimant's results on a Global Assessment of Functioning ("GAF") test performed by Dr. Bernadotte (R. 21, 283). The ALJ particularly discussed the weight given to Claimant's GAF score, noting that GAF scores are generally of limited evidentiary value because they "reveal only snapshots of impaired and improved behavior, state nothing in terms of

function-by-function capacity or limitations, and do not provide a reliable longitudinal picture of an individual's mental functioning." (R. 21). Likewise, the ALJ considered Dr. Salgado's medical opinions at step three. The ALJ noted that Dr. Salgado, and other psychiatrists at CHI, found that Claimant showed behavioral improvements and excelled academically from October 2016 through October 2017 (R. 21, 347). Accordingly, the undersigned recommends that Plaintiff's Motion be denied with respect to this argument.

### b. School Records

Plaintiff relies on Claimant's disciplinary records and teachers' opinions in support of her argument that she has greater limitations than the ALJ found. Additionally, Plaintiff argues that the ALJ did not assign enough weight to the Claimant's conduct grades nor the February 2016 Teacher Questionnaire completed by Ms. Cepeda. The ALJ's opinion however shows that he considered those opinions and materials and explained why he afforded them little weight (R. 20-23). The ALJ stated that those opinions and materials were from (1) non-qualified medical professionals that were not trained to give opinions regarding an individual's work-related functions; and (2) were inconsistent with the available medical evidence of record (R. 23).

The ALJ did not err in this respect and indeed, was not required to explain the reasons for the weight he afforded these records, as there is "no requirement in the Social Security regulations or rulings that the ALJ assign any weight to non-medical sources, only that the evidence be considered." *Reed v. Astrue*, 2009 WL 3571699, at *3 (S.D. Ala. Oct. 26, 2009). The ALJ's duty with respect to teacher and other non-medical sources is met when the ALJ "'describe[s] his analysis with enough detail to satisfy a reviewing court that he gave all of the relevant evidence before him [or her] its due regard.'" *Cole v. Comm'r of Soc. Sec.*, 2012 WL 4077233, at *4 (M.D. Fla. Sept. 17, 2012) (quoting *Astrue*, 2009 WL 3571699, at *2).

Here, the ALJ not only considered the opinions of Claimant's teachers, the February 2016 Teacher Questionnaire, and the conduct grades in her decision, but also stated that he considered the entire record, including medical and non-medical opinion evidence (R. 16, 18, 20, 22). Because the ALJ gave the non-medical evidence sufficient consideration, I find no error warranting reversal on this ground.

**2. Whether the ALJ Erred in Determining Claimant's Impairments Do Not Meet or Functionally Equal a Listed Impairment**

Plaintiff also argues that the ALJ erred at step three at which he determined that Claimant's ADHD does not meet, equal, or functionally equal a listed impairment because: (1) the ALJ analyzed Claimant's impairment under the wrong listing; and (2) the ALJ erred in concluding that Claimant experienced a "less than marked" limitation in the domains of "attending and completing terms" and "interacting with others."

At step three, the ALJ must determine whether the impairment "causes marked and severe functional limitations" for the child. 20 C.F.R. §§416.911(b), 416.924(d). For each impairment, the Listings provide various limitations on a claimant's abilities that their impairment(s) may impose. Limitations in the Listings are considered "marked and severe." *Id*.

Here, the ALJ found that although Claimant has an impairment in the form of ADHD, the Claimant does not have an impairment or combination of impairments that meet or medically equal the severity of one of the impairments catalogued in the Listings. In his Opinion, the ALJ cited to Listing 112.14, which discusses the impairment of developmental disorders in infants and toddlers. Listing 112.14 states as follows:

> **112.14 Developmental disorders in infants and toddlers (see 112.00B11, 112.001), satisfied by A and B:**
>
> A. Medical documentation of one or both of the following:
>    1. A delay or deficit in the development of the age-appropriate skills; or

    2. A loss of previously acquired skills.

AND

  B. Extreme limitation of one, or more marked limitation of two, of the following developmental abilities (*see* 112.00F):
    1. Plan and control motor movement (*see* 112.00I4b(i)).
    2. Understand and remember (*see* 112.00I4b(ii)).
    3. Interact with others (*see* 112.00I4b(iii)).
    4. Regulate physiological functions, attention, emotion, and behavior (*see* 112.00I4b(iv)).

The ALJ concluded that "the claimant has attention deficit disorder…this condition fails to manifest any symptoms rising to the [Listings]." (R. 19). The ALJ then proceeded to determine whether Claimant's impairment caused limitations that are functionally equivalent to the limitations found in any listed impairment. The ALJ also found that Claimant demonstrated a less than marked limitation in attending and completing tasks and interacting with others, and a marked limitation in the ability to care for herself (R. 24–30).

### a. Whether the ALJ Erred in Applying Listing 112.14

Plaintiff argues that the ALJ erred in analyzing Plaintiff's impairment at step three under Listing 112.14, which applies to developmental disorders in infants and toddlers, and argues that the ALJ should have applied Listing 112.11, which applies to neurodevelopmental disorders for children age 3 to attainment of age 18.

**112.11 Neurodevelopmental disorders (see 112.00B9), for children age 3 to attainment of age 18, satisfied by A and B:**

  A. Medical documentation of the requirements of paragraph 1, 2, or 3:
    1. <u>One</u> or both of the following:
       a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or
       b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").
    2. Significant difficulties learning and using academic skills; or
    3. Recurrent motor movement or vocalization.

13

>    AND
>
>    B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (*see* 112.00F):
>    1. Understand, remember, or apply information (*see* 112.00E1).
>    2. Interact with others (*see* 112.00E2).
>    3. Concentrate, persist, or maintain pace (*see* 112.00E3).
>    4. Adapt or manage oneself (*see* 112.00E4)

Plaintiff contends that this error is critical as it would have resulted in a finding of disability because Claimant's impairment of ADHD satisfies both parts A and B of Listing 112.11. In his Motion, Defendant responds that the error was harmless as the ALJ considered the factors numerated in Listing 112.11 and made specific findings as to each.

ADHD is an impairment categorized under Listing 112.11. *See* 20 C.F.R. pt. 404, subpt. P., app. 1. § 112.11. *See also Andres v. Comm'r of Soc. Sec.*, No. 13-CV-988 (M.D. Fla. Aug. 20, 2014); *Golden v. Comm'r of Soc. Sec.*, No. 14-CV-2129, 2015 WL 9694504 (M.D. Fla. Dec. 9, 2015). Notwithstanding the ALJ's citation to 112.14, it is apparent the ALJ did in fact apply the criteria of the correct Listing. A review of the ALJ's decision reveals that although he cited Listing 112.14 in his Opinion, he analyzed Claimant's disability by considering all of the elements of Listing 112.11 and determined that Claimant's impairment did not meet or functionally equal that listing. The ALJ found that Claimant's impairment satisfied part A of Listing 112.11 noting that Claimant had trouble sustaining attention and displayed hyperactive and impulsive behavior (R. 21). After considering the four areas of mental functioning in part B of Listing 112.11, the ALJ concluded that Claimant's impairment did not satisfy part B of that listing. (R. 21–29).

Ultimately, Plaintiff's appeal of the ALJ's opinion amounts to a challenge of the ALJ's interpretation of the records submitted but fails to articulate any prejudice resulting from the erroneous citation, if it was indeed error, Plaintiff has not demonstrated that the error was harmful. *See Laury v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 986 (11th Cir. 2015) (applying the harmless

error doctrine to a Social Security appeal); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Thus, the ALJ's erroneous citation to Listing 112.14 is harmless.

### b. Whether the ALJ Erred in Finding that Claimant's Impairment Did not Functionally Equal Any Listing.

Finally, Plaintiff argues that the ALJ's assessment regarding the severity of Claimant's functional limitations in the domains of "attending and completing tasks" and "interacting and relating with others" are not supported by the substantial evidence of record. The first domain, attending and completing tasks, considers how well a child is able to focus and maintain attention and how well the child is able to begin, carryout, and finish activities including the child's ability to prioritize tasks and manage time. 20 C.F.R. § 416.926a(h). School-aged children "should be able to focus [ ] attention in a variety of situations in order to follow directions, remember and organize [ ] school materials, and complete classroom and homework assignments." § 416.926a(h)(2)(iv). Nonexclusive examples demonstrating limitations in attending and completing tasks are the child requiring extra supervision or being easily startled, distracted, overreactive, sidetracked, distracting to others, easily frustrated, and quick to quit tasks. § 416.926a(h)(3)(i)-(v).

The second domain, interacting and relating with others, considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, respect, and take care of the possessions of others. *See* § 416.926a(i). Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community. *Id.*; SSR 09-5p. Under the social security regulations, a child of school age:

> [S]hould be able to develop more lasting friendships with children who are [his] age. [He] should begin to understand how to work in groups to create projects and solve problems. [He] should have an increasing ability to understand another's

15

>  point of view and to tolerate differences. [He] should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

§ 416.926a(i)(2)(iv) (quotation marks omitted).

After a careful review of the record, the undersigned finds that there is substantial evidence supporting the ALJ's determination that there is only one marked limitation in the domain of "caring for yourself." With respect to the first domain of attending and completing tasks, the ALJ thoroughly explained that despite Claimant's apparent fidgeting, difficulty concentrating, and reported disruptive behaviors in school, the Claimant has also achieved appropriate grades in school without special education services and remains capable of completing her homework, school assignments, and household chores, albeit with prompts (R. 26).

As for the second domain of interacting and relating with others, the ALJ thoroughly considered the Claimant's history of aggressive behaviors toward herself and others. However, the ALJ also considered that Claimant's lack of documented problems relating appropriately with the various medical professionals of record (R. 27). Additionally, besides Claimant's reluctance to communicate with the ALJ, there are no reported issues with Claimant's ability to speak or communicate with others. *Id*. In sum, the ALJ's decision is supported by substantial evidence, states how it was weighed, and why Claimant's medical illnesses do not equate to a marked limitation in one of the six domains, excluding "caring for yourself." Finding no error, I recommend that Defendant's Motion for Summary Judgment be granted, and Plaintiff's Motion denied.

## V.     RECOMMENDATIONS

Substantial evidence supports the ALJ's findings as noted in his unfavorable decision. The ALJ's conclusion applied proper legal standards and any errors therein did not prejudice Claimant

and were harmless. For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Claimant's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see e.g., Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**DONE** and **ORDERED** in Chambers at Miami, Florida this 18th day of October, 2019.

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE